**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STEVEN MILLER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>GALENA BIOPHARMA, INC., MARK J. AHN, MARK W. SCHWARTZ, RYAN M. DUNLAP, and JOHN T. BURNS,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Steven Miller ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Galena Biopharma, Inc. ("Galena" or the "Company"), and

1

information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Galena between August 11, 2014 and January 31, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a significant portion of Defendants' actions, and the subsequent damages, took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Galena securities at artificially inflated prices during the Class Period and was economically damaged thereby.

7. Defendant Galena is a biopharmaceutical company which focuses on developing hematology and oncology treatments. Galena is incorporated in Delaware and headquartered in San Ramon, California. Galena securities trade on NASDAQ under the ticker "GALE."

8. Defendant Mark J. Ahn ("Ahn") was the Company's Chief Executive Officer ("CEO") and President from the beginning of the Class Period until August 21, 2014.

9. Defendant Mark W. Schwartz ("Schwartz") was the CEO of Galena from August 21, 2014 until January 31, 2017.

10. Defendant Ryan M. Dunlap ("Dunlap") has been the Company's Chief Financial Officer ("CFO") from the beginning of the Class Period until his resignation effective December 31, 2015.

11. Defendant John T. Burns ("Burns") has been Galena's Controller since June 2015 and Galena's Principal Accounting Officer since February 23, 2016.

12. Defendants Ahn, Schwarz, Dunlap, and Burns are collectively referred to herein as the "Individual Defendants."

13. Each of the Individual Defendants:

   (a) directly participated in the management of the Company;

   (b) was directly involved in the day-to-day operations of the Company at the highest levels;

3

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

14. Galena is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Galena under *respondeat superior* and agency principles.

16. Defendants Galena and Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17. Galena's first commercial product was Abstral which was approved to treat pain in cancer patients who were already receiving, and who are tolerant to, opioid therapy for their persistent baseline cancer.

18. On November 20, 2015, the Company announced that it has sold Abstral to a private company in a deal valued at up to $12 million.

## Materially False and Misleading
## Statements Issued During the Class Period

19. On August 11, 2014 the Company filed a Form 10-Q for the quarter ending June 30, 2014 (the "2Q14 10-Q") with the SEC. The 2Q14 10-Q was signed by Defendants Ahn and Dunlap. Attached to the 2Q14 10-Q were certifications pursuant to the Sarbanes Oxley Act of 2002 ("SOX") signed by Defendants Ahn and Dunlap attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure all fraud was disclosed.

20. The 2Q14 10-Q discussed the selling of Abstral, stating in relevant part:

> We sell Abstral product in the United States to wholesale pharmaceutical distributors and retail pharmacies, or our "customers," subject to rights of return. We recognize Abstral product sales at the time title transfers to our customer, and provide allowances for estimated future product returns, prompt pay discounts, wholesaler discounts, rebates, chargebacks, patient assistance program benefits and other deductions as needed. The company is required to make significant judgments and estimates in determining some of these allowances. If actual results differ from its estimates, the company will be required to make adjustments to these allowances in the future.

21. On March 5, 2015, the Company filed its annual report on Form 10-K for the year ending December 31, 2014 (the "2014 10-K") with the SEC. The 2014 10-K was signed by Defendants Schwartz and Dunlap. Attached to the 2014 10-K were signed SOX certifications by Defendants Schwartz and Dunlap attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure all fraud was disclosed.

22. The 2014 10-K discussed the selling of Abstral, stating in relevant part:

> ***Abstral Target Revenue Achieved*** *- We achieved our target net revenue from the sale of Abstral for 2014.*

5

> On March 5, 2015, we announced our results of operations from the quarter and the fiscal year ended December 31, 2014, including net revenue of $9.3 million from the sale of Abstral. We also reiterated our 2015 net revenue expectations of $15 million to $18 million.
>
> \* \* \*
>
> We sell Abstral product in the United States to wholesale pharmaceutical distributors and retail pharmacies, or collectively, our "customers," subject to rights of return. During the year ended December 31, 2013, we began recognizing Abstral product sales at the time title transfers to our customer, and providing for an estimate of future product returns. Revenue from product sales is recorded net of provisions for estimated returns, prompt pay discounts, wholesaler discounts, rebates, chargebacks, patient assistance program rebates and other deductions as needed. Refer to Note 1 of the notes to the consolidated financial statements for a detailed description of these reserves.

23. The statements contained in ¶¶ 19-22 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company's sales of Abstral were based on unsustainable sales and marketing practices; (2) such sales and marketing practices could subject the Company to a criminal investigation; and (3) as a result, Defendants' statements about the Company's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### **The Truth Begins to Emerge**

24. On December 22, 2015, Galena filed a Form 8-K with the SEC signed by Defendants Schwartz disclosing that Galena received a subpoena from the U.S. Attorney's Office for the District of New Jersey, stating in relevant part:

> On December 16, 2015, Galena Biopharma, Inc. ("Galena") received a subpoena from the U.S. Attorney's Office for the District of New Jersey. The subpoena requests the production of a broad range of documents pertaining to marketing and promotional practices related to the product ABSTRAL® (fentanyl)

6

Sublingual Tablets. Galena intends to cooperate with the government's investigation. Galena can make no assurances as to the time or resources that will need to be devoted to this inquiry or its final outcome, or the impact, if any, of this inquiry or any proceedings on Galena's business, financial condition, results of operations and cash flows.

25. On this news, shares of Galena fell $0.06 per share or over 3.6% from its previous closing price to close at $1.57 per share on December 23, 2015, damaging investors.

26. On March 10, 2016, the Company filed its annual report on Form 10-K for the year ending December 31, 2015 (the "2015 10-K") with the SEC. The 2015 10-K was signed by Defendants Schwartz and Burns. Attached to the 2015 10-K were signed SOX certifications by Defendants Schwartz and Burns attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure all fraud was disclosed.

27. The 2015 10-K discussed the selling of Abstral, stating in relevant part:

We sold Abstral product in the United States to wholesale pharmaceutical distributors and retail pharmacies, or collectively, our "customers," subject to rights of return. During the year ended December 31, 2013, we began recognizing Abstral product sales at the time title transfers to our customer, and providing for an estimate of future product returns. Revenue from product sales is recorded net of provisions for estimated returns, prompt pay discounts, wholesaler discounts, rebates, chargebacks, patient assistance program rebates and other deductions as needed.

28. The 2015 10-K also discussed the subpoena the Company received from the U.S. Attorney's Office for the District of New Jersey, stating in relevant part:

A federal investigation of two of the high-prescribing physicians for Abstral has resulted in the criminal prosecution of the two physicians for alleged violations of the federal False Claims Act and other federal statutes. The criminal trial is set for some time in 2016. We have received a trial subpoena for documents in connection with that investigation and we have been in contact with the U.S. Attorney's Office for the Southern District of Alabama, which is handling the criminal trial, and are cooperating in the production of documents. We are a target or subject of that investigation. There also have been federal and state investigations of a company that has a product that competes with Abstral in the

same therapeutic class, and we have learned that the FDA and other governmental agencies may be investigating our Abstral promotion practices. On December 16, 2015, we received a subpoena issued by the U.S. Attorney's Office in District of New Jersey requesting the production of a broad range of documents pertaining to our marketing and promotional practices for Abstral. We have been in contact with the U.S. Attorney's Office for the District of New Jersey and are cooperating in the production of the requested documents. We are unable to predict whether we could become subject to legal or administrative actions as a result of these matters, or the impact of such matters. If we are found to be in violation of the False Claims Act, Anti-Kickback Statute, Patient Protection and Affordable Care Act, or any other applicable state or any federal fraud and abuse laws, we may be subject to penalties, such as civil and criminal penalties, damages, fines, or an administrative action of exclusion from government health care reimbursement programs. We can make no assurances as to the time or resources that will need to be devoted to these matters or their outcome, or the impact, if any, that these matters or any resulting legal or administrative proceedings may have on our business or financial condition.

The federal False Claims Act prohibits persons from knowingly filing, or causing to be filed, a false claim to, or the knowing use of false statements to obtain payment from, the federal government. *Qui tam* suits filed under the False Claims Act can be brought by any individual on behalf of the government and such individuals, commonly known as "relators" or "whistleblowers," may share in any amounts paid by the entity to the government in fines or settlement. The frequency of filing qui tam actions has increased significantly in recent years, causing greater numbers of health care companies to have to defend such *qui tam* actions and pay substantial sums to settle such actions.

29. The statements contained in ¶¶ 26-28 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company's sales of Abstral were based on unsustainable sales and marketing practices; (2) such sales and marketing practices could subject the company to a criminal investigation; and (3) as a result, Defendants' statements about the Company's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

30. On January 9, 2017, before the market opened, the Company filed a Form 8-K with the SEC to give an update on the U.S. Attorney's Office for the District of New Jersey and disclosing a criminal investigation, stating in relevant part:

> *Abstral Investigation*
>
> As previously disclosed, on December 16, 2015, we received a subpoena issued by the U.S. Attorney's Office for the District of New Jersey requesting the production of a broad range of documents pertaining to our marketing and promotional practices for Abstral, the commercial product we sold in the fourth quarter of 2015. We have been in contact with the U.S. Attorney's Office for the District of New Jersey and Department of Justice, and we have come understand that the investigation being undertaken by the U.S. Attorney's Office for the District of New Jersey and Department of Justice is a criminal investigation in addition to a civil investigation that could ultimately involve the Company as well as one or more current and/or former employees. Pursuant to the Company's charter, we are currently reimbursing any former and current employees' attorney's fees with respect to the investigation. We are cooperating with the civil and criminal investigation, and through our outside counsel we have recently begun preliminary discussions with the government aimed at the ultimate resolution of the investigation regarding the Company.

31. On this news, shares of Galena fell $0.04 per share or over 1.9% from its previous closing price to close at $2.03 per share on January 9, 2017, further damaging investors.

32. On January 31, 2017, the Company issued a press release entitled, "Galena Biopharma Announces the Resignation of its President and Chief Executive Officer and the Evaluation of Strategic Alternatives," stating in relevant part:

> **San Ramon, California, January 31, 2017**— Galena Biopharma, Inc. (NASDAQ: GALE), a biopharmaceutical company committed to the development and commercialization of hematology and oncology therapeutics that address unmet medical needs, today announced that the Board of Directors has entered into a separation agreement with Mark W. Schwartz, Ph.D. under which Dr. Schwartz will resign from the company and its affiliates as the President, Chief Executive Officer, and member of the Board of Directors, effective today. The Board of Directors expects to appoint an Interim Chief Executive Officer in the next couple weeks.
>
> The Board of Directors also announced that it is in the process of engaging an independent advisory firm to evaluate strategic alternatives for the company

focused on maximizing stockholder value. Potential strategic alternatives that may be explored or evaluated as part of this review include continuing to advance the clinical programs as a stand-alone entity, a sale of the company, a business combination, merger or reverse merger, and a license or other disposition of corporate assets of the company. There is no set timetable for this process and there can be no assurance that this process will result in a transaction. While the Company evaluates its strategic alternatives, Galena's investigator-sponsored immunotherapy trials will remain ongoing. The Company is evaluating the appropriate time to commence the GALE-401 trial and anticipates making a definitive determination in the second half of 2017.

"After critical assessment of the current status of the company, we believe that it is the right time to run a strategic evaluation of our opportunities as we look to maximize value for our stockholders," said Sanford J. Hillsberg, Galena's Chairman of the Board of Directors. "We acknowledge Mark's six years of service with Galena and wish him well in his future endeavors."

33. On that same day, *TheStreet.com* published an article entitled "Galena Sacks CEO Amid Escalating Criminal Probe Into Fentanyl Drug Marketing," noting the timing of Defendant Schwartz' exit coincided with the Company's admission of a criminal investigation and his outsized role in the marketing of Abstral, stating in relevant part:

Galena Sacks CEO Amid Escalating Criminal Probe Into Fentanyl Drug Marketing

The timing of Schwartz' exit is noteworthy given Galena's admission on Jan. 9 of a criminal investigation of the company by the federal prosecutors into the marketing of Abstral.

Adam Feuerstein Jan 31, 2017 6:16 PM EST

Galena Biopharma (GALE) sacked CEO Mark Schwartz on Tuesday, marking the second time in less than three years that the troubled drug company's board fired its top executive.

The timing of Schwartz' exit is noteworthy given Galena's admission on Jan. 9 of a criminal investigation of the company by the U.S. Attorney's Office in New Jersey and the U.S. Department of Justice. The Feds are investigating Galena's marketing and promotional practices for Abstral, the company's fentanyl-based painkiller, according to an 8-K filing with the Securities and Exchange Commission.

Schwartz was instrumental in Galena acquiring Abstral in 2013 and played a significant role in the drug's marketing, according to former employees. Galena divested Abstral in 2015.

34. On this news, shares of Galena fell $0.53 per share or over 32% over the next two trading days to close at $1.12 per share on February 2, 2017, further damaging investors.

35. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Galena securities publicly traded on NASDAQ during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Galena, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

37. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Galena securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

38. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

39. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether the Exchange Act was violated by Defendants' acts as alleged herein;

    b. whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business Galena;

    c. whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

    d. whether the Defendants caused the Company to issue false and misleading SEC filings during the Class Period;

    e. whether Defendants acted knowingly or recklessly in issuing false and SEC filing

    f. whether the prices of Galena's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

    g. whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

42. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

    a. Galena securities met the requirements for listing, and were listed and actively traded on NASDAQ, a highly efficient and automated market;

    b. As a public issuer, the Company filed periodic public reports with the SEC and NASDAQ;

    c. The Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

    d. The Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

43. Based on the foregoing, the market for Galena securities promptly digested current information regarding the Company from all publicly available sources and reflected

such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

44. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

45. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

48. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices and a

course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Galena securities during the Class Period.

49. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Galena, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

50. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Company personnel to members of the investing public, including Plaintiff and the Class.

51. As a result of the foregoing, the market price of Galena securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Galena securities during the Class Period in purchasing Galena securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

52. Had Plaintiff and the other members of the Class been aware that the market price of Galena securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Galena securities at the artificially inflated prices that they did, or at all.

53. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

54. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Galena securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

55. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about Galena's misstatement of revenue and profit and false financial statements.

57. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the

Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

58. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Galena securities.

59. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by The Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 13, 2017               Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence M. Rosen
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com


Counsel for Plaintiff